# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DAMETRI DALE,                           )
                                        )
          Plaintiff,       )
                                        )
       v.                      )             1:23CV282
                                        )
FNU JURDEGAN, et al.,                   )
                                        )
          Defendants.       )

## ORDER, MEMORANDUM OPINION, AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

     This matter is before the court on two motions: Plaintiff Dametri Dale's "Motion for Temporary Restraining Order and a Preliminary Injunction Order" ("TRO Motion," Docket Entry 36) and Plaintiff's "Motion for the Issuance of a Subpoena and to have a United States Marshal or a Person Specially Appointed by the Court to Serve the Subpoena, and for an Order to Transport" ("Subpoena Motion," Docket Entry 37). For the following reasons, the undersigned recommends that the TRO Motion be denied and orders that the Subpoena Motion be denied.

## I.    BACKGROUND

### a.  Complaint

     Plaintiff, a *pro se* prisoner currently housed at Scotland Correctional Institution ("SCI"), filed a Complaint pursuant to 42 U.S.C. § 1983 alleging constitutional violations and state law claims against Defendants FNU Jurdegan, FNU Barnes, FNU Brit, FNU Broady, FNU Nelly, FNU Simmons, FNU Hafeez, and Warden Stephen Jacobs ("Warden Jacobs") (collectively,

1

"Defendants").  (*See generally* Complaint ("Compl."), Docket Entry 2.)[1]  Plaintiff brings suit against Defendants in both their individual and official capacities.  (*Id.* at 3-6.)[2]

In his Complaint, Plaintiff essentially alleges that Defendants: (1) ignored his complaints regarding the condition of his prison cell, which has caused Plaintiff serious physical injury; (2) violated prison policy by improperly restricting Plaintiff's and other inmates' access to clean clothing, clean linen, and other services related to personal hygiene (including shaves and haircuts); (3) improperly punished Plaintiff and others by restricting canteen, phone, and visitation privileges; (4) denied Plaintiff access to "law materials" on the tablets provided by SCI and limited Plaintiff's writing material; and (5) unlawfully engaged in the use of excessive force on Plaintiff by use of pepper spray.  (*See id.* at 8-13.)

It appears that most, if not all, of the alleged violations involve incidents while Plaintiff was housed in the restrictive housing unit for control purposes ("RHCP"), which Plaintiff alleges that Defendants have confused with restrictive housing for disciplinary purposes ("RHDP").  (*Id.* at 10.)  Plaintiff lists claims for excessive force, denial of access to the courts, conditions of confinement, due process violations, cruel and unusual punishment, and assault.  (*Id.* at 6, 15.)  Plaintiff also lists a claim for "intentional and harmful interference with mail, visitation, and other forms of communication (such as legal telephone calls)."  (*See id.* at 15; *see also id.* at 18.)

---

[1] Plaintiff listed the names of some Defendants incorrectly.  (*See* Docket Entry 22 n.1 and 2 (stating that Defendant "Brown" was incorrectly named as FNU Jurdegan and that Defendant "Neill" was incorrectly named as "FNU Nelly").)  "FNU" stands for "first name unknown."

[2] Unless otherwise noted, all citations herein refer to the page numbers at the bottom right-hand corner of the documents as they appear in the Court's CM/ECF system.

2

### b.  **Procedural Background**

Plaintiff initiated this action on March 30, 2023 (Compl.), and was permitted, pursuant to 28 U.S.C. § 1915, to proceed *in forma pauperis* (Docket Entry 3; *see also* Docket Entry 1).  On May 22, 2023, and on June 22, 2023, Plaintiff filed motions for temporary restraining orders and preliminary injunctions.  (*See* Docket Entries 7, 8; *see also* Docket Entry 9.)  The latter motion was filed simultaneously with and appears to have been based upon Plaintiff's Amended Complaint and other documents. (*See* Docket Entries 9-11.)  Plaintiff later withdrew his Amended Complaint (Docket Entry 26); the original Complaint is the operative complaint in this action.  (*See* Text Order dated 10/31/2023.)  On July 7, 2023, Plaintiff filed a Motion for Class Action Determination (Docket Entry 12) and a Motion for Copies (Docket Entry 13).

On November 3, 2023, this Court issued an order, opinion, and recommendation, which recommended that the motions contained in Docket Entries 7, 8, and 12 be denied, and which ordered that the motion contained in Docket Entry 13 be denied. (Docket Entry 32).[3]  On November 9, 2023, Plaintiff withdrew the motions contained in Docket Entries 7, 8, and 12.  (*See* Docket Entry 34.)  On November 28, 2023, this Court issued an order vacating the recommendation it filed on November 3, 2023, ordering the clerk to terminate the motions contained in Docket Entries 7, 8, and 12.  (Docket Entry 35.)

### c.  **TRO Motion**

On April 15, 2024, Plaintiff filed the TRO Motion.  Therein, Plaintiff seeks a "Temporary Restraining Order and a Preliminary Injunction Order" pursuant to Federal

---

[3] *Dale v. Jurdegan*, No. 1:23CV282, 2023 WL 7282716, at *1 (M.D.N.C. Nov. 3, 2023).

Rule of Civil Procedure ("FRCP") 65. (*See* TRO Motion at 1, 22-25.) Much of the TRO Motion reiterates the substantive content of the Complaint. Plaintiff argues that he was removed from RHCP to general population in October 2023, but that he has been placed back on RHCP and "is now subjected to the same conditions as previously mentioned in his Complaint and other pleadings." (*Id.* at 2.) Plaintiff appends several exhibits to the TRO Order, including five reproductions of NCDAC policies and procedures regarding clothing, bedding, personal hygiene, conditions of confinement, and offender conduct rules (Docket Entries 36-1 through 36-5) and a copy of a Mecklenburg County Superior Court order regarding Plaintiff's Motion for Appropriate Relief and other ancillary motions. ("MAR Order," Docket Entry 36-6.)

Plaintiff lists definitions of RHCP, RHDP, and Restrictive Housing for Administrative Purposes ("RHAP"). (TRO Motion at 2-4.) He argues that "[i]n September of 2022 and February of 2024 Plaintiff was placed in [RHAP] due to an alleged rule violation." (*Id.* at 4-5.) Then, "after pleading guilty or otherwise being found guilty," he asserts that he was placed on RHDP "and sanctioned and punished." (*Id.* at 5.) He further argues that upon final disposition of the disciplinary process he was placed on RHCP. (*See id.* at 5-6.) Plaintiff contends that he has been in RHCP for "15 months and counting" and that he has been subjected to "excessive, inhumane, and otherwise continuous" conditions while there. (*Id.* at 6.) Plaintiff argues that he is being punished by the following "ongoing" issues: being deprived of shaves and haircuts, of clean clothing and linen, of adequate sanitation and cell clean-up, and of access to the courts. (*Id.* at 6-9, 16-20.)

4

Further, Plaintiff argues that "Defendants have both confused RHCP as RHDP and have effectively disguised cruel, unusual and excessive punishment as RHCP." (*Id.* at 10, 20-22.) Specifically, Plaintiff argues that he is suffering and being punished because, in violation of North Carolina Department of Adult Corrections ("NCDAC")[4] policy, he is not able to order adequate "food and hygiene items from the canteen, make telephone calls, watch television, attend religious services, receive library books, or use a tablet." (*See id.* at 9-16.) Plaintiff argues that he is improperly required to "fill out sick calls to receive adequate hygiene and medical products[,]" which cost $5 per call and have created a "financial hardship" for him. (*Id.* at 11-13.)

Plaintiff argues he was recently diagnosed with diabetes, which makes it necessary for him to have access to glucose tablets and certain foods, and that it would be less financially burdensome for him to obtain these items if he were able to order them via canteen rather than via sick call. (*See id.* at 13.) He also argues that he has "had several injuries as a result of the Defendants['] actions" including developing a skin abscess which he claims has worsened due to his not having access to antibiotic soap that a physician requested for him. (*Id.* at 22.)

He further argues that "Plaintiff is essentially in a cell 24-hours a day on most days, may or may not receive recreation and showers depending on if the facility is short-staffed, and receives three meals a day in his cell." (*Id.* at 10.) Plaintiff argues he was "placed on psychiatric medication to help maintain, control and deal with the conditions of confinement on RHCP." (*Id.*) Plaintiff argues that "he has already suffered irreparable harm, and … he will continue to suffer if this court does not issue injunctive relief." (*Id.* at 23-24.)

---

[4] Previously known as the North Carolina Department of Public Safety ("NCDPS"). *Dale v. N. Carolina Dep't of Pub. Safety*, No. 1:22-CV-00259-MR, 2025 WL 374946, at *6 (W.D.N.C. Feb. 3, 2025).

Plaintiff argues that "the balance of equities [is] in his favor" and that "an injunction is in the public interest." (*Id.* at 24.) Plaintiff states that he "understands and actually agrees that regulations that are 'reasonably related' to the institution's interest in maintaining prison security are not unconstitutional punishment, even if they cause discomfort" but complains that "the poor conditions and restrictive regulations serve no purpose at all but to punish Plaintiff[.]" (*Id.* at 25.) Plaintiff also argues that "even though certain conditions might not be unconstitutional on their own, they add up to create an overall effect that is unconstitutional." (*Id.*)

> The relief sought by Plaintiff includes requests for an evidentiary hearing and

> an order ordering Defendants show cause … why a preliminary injunction should not issue pursuant to Rule 65(A) of the [FRCP] enjoining the Defendants, their successors in office, agents and employees and all other persons acting in concert and participation with them from: A) Using [RHCP] as a continuous punishment on the plaintiff, such as restricting canteen, telephone, television, reading books, a tablet, law library, clean clothing and linen, cell sanitation and clean-up, and hair-cuts and shaves; B) Losing Plaintiff's legal mail whether incoming or outgoing; C) Make immediate and interim changes to NCDAC policies and procedures that will stop its employees from using [RHCP] as a continuous punishment on Plaintiff and other offenders; and D) Not giving plaintiff cell sanitation and clean-up, clean clothing and linen, and haircuts and shaves on a consistent basis as required by NCDAC policies and procedures.

(*Id.* at 27-28.) Plaintiff further requests "[a]n order, ordering that effective immediately, and pending the hearing and determination of the order to show cause, the Defendants and each of their officers, agents, employers, and all persons acting in concert or participation with them, are restrained from" sections A), B), and D) from the list above. (*Id.* at 28-29.) Plaintiff also requests an order to transport Plaintiff and witnesses to the requested evidentiary hearing (*Id.* at 29.)

### d. Subpoena Motion

In the Subpoena Motion, Plaintiff seeks the issuance of a subpoena "for several witnesses who would testify at an evidentiary hearing in the event this court orders a hearing

on [the TRO Motion]" and reiterates his request for transport to said hearing. (Subpoena Motion at 1-3, 6.)[5] Plaintiff argues that said witnesses "are material and will give direct testimony with regards to the material facts." (*Id.* at 3.)

He argues that subpoenaing these witnesses will "assist Plaintiff in meeting the requirements of injunctive relief." (*Id.* at 7.) Plaintiff argues that "he currently has no money, assets, and is otherwise in debt. Therefore, he relies on the Court to grant this motion in the interest of justice" and requests that a United States Marshals Service employee or other person specially appointed by the Court serve the subpoenas upon the named witnesses. (*Id.*) Plaintiff further argues that "if Plaintiff is unable to call these individuals as witnesses in support of [the TRO Motion], that may be detrimental to his case[] and would otherwise be prejudicial to him." (*Id.*)

On May 7, 2024, Defendants filed a Response in opposition to the Subpoena Motion and the TRO Motion (Docket Entry 39), to which Plaintiff filed a Reply on May 31, 2024 (Docket Entry 40). Several other motions have since been filed (*see* Docket Entries 41 through 54.)

II.  **DISCUSSION**

a.  **TRO Motion**

A party seeking a preliminary injunction or temporary restraining order[6] must establish all four of the following elements: (1) he is likely to succeed on the merits; (2) he is likely to suffer

---

[5] The witnesses for which Plaintiff seeks a subpoena are four correctional sergeants at SCI (FNU Danford, Reneisha Neal, Teresa Simmons, and FNU Jackson); Valris Brown, Unit Manager at SCI; and nine offenders in custody of the NCDAC (Devin C. Jones #1607745; Donald McLaughlin #1005359; Armani McCray #1706046; Camari McLean #1530769; Montreal Banner #1347226; De'Tray Evans #1146881; Kenyon Spence #1602445; Wallace Belfield Jr. #0910762; and Darrel Anderson #0777284). (Subpoena Motion at 3-6.)

[6] The substantive standard for granting either a temporary restraining order or a preliminary injunction is the same. *See e.g.*, *S.C. Progressive Network Educ. Fund v. Andino*, 493 F. Supp. 3d 460, 465 (D.S.C. 2020); *United States Dept. of Labor v. Wolf Run Mining Co.*, 452 F.3d 275, 281 n.1 (4th Cir. 2006).

irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *see also The Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346-47 (4th Cir. 2009), *overruling Blackwelder Furniture Co. of Statesville v. Seilig Mfg. Co.*, 550 F.2d 189 (4th Cir. 1977).[7]

A party must make a clear showing that he is likely to succeed on the merits of his claim. *Winter*, 555 U.S. at 20; *Real Truth*, 575 F.3d at 345-46. Similarly, he must make a clear showing that he is likely to be irreparably harmed absent injunctive relief. *Winter*, 555 U.S. at 20-22; *Real Truth*, 575 F.3d at 347. Only then does the Court consider whether the balance of equities tips in the favor of the party seeking the injunction. *See Real Truth*, 575 F.3d at 346-47. Finally, the Court must pay particular regard to the impact of the extraordinary relief of an injunction upon the public interest. *Real Truth*, 575 F.3d at 347 (quoting *Winter*, 555 U.S. at 23-24). Injunctive relief, such as the issuance of a preliminary injunction, is an extraordinary remedy that may be awarded only upon a clear showing that the plaintiff is entitled to such relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *see also MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001) (citation and quotation omitted) (a preliminary injunction is an "extraordinary remed[y] involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances").

---

[7] The original decision in *Real Truth* was vacated by the Supreme Court for further consideration in light of *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010). However, the Fourth Circuit reissued its opinion on Parts I and II of its earlier opinion in the case, 575 F.3d at 345-47, stating the facts and articulating the standard for issuance of a preliminary injunction, before remanding it to the district court for consideration in light of *Citizens United. See The Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 607 F.3d 355 (4th Cir. 2010).

8

Here, as with his previously filed motions (Docket Entries 7 through 9), Plaintiff has failed to make the requisite showing for preliminary injunctive relief. Plaintiff has not made a "clear showing" that he is likely to succeed on the merits. *Winter*, 555 U.S. at 20.

As a threshold matter, in a subsequent filing, Plaintiff appears to abandon his claims for denial of access to the courts and for use of excessive force by Defendants. (*See* Docket Entry 50-1 at 1-2, 6-7, 17.) Plaintiff states that he is only pursuing the following two claims: "(1) Conditions of confinement claim related to unclean cells, no cell clean-up, lack of clean clothing and linen, lack of shaves and haircuts, and … continued punishment on RHCP; and (2) Due Process claim related to no process by which one can stop the continued punishment while on RHCP [sic]." (*See id.* at 6.)

Therefore, to the extent that Plaintiff has abandoned his claims regarding access to the courts and excessive force, he is not entitled to injunctive relief regarding said claims. That notwithstanding, for the following reasons, to the extent Plaintiff has not abandoned said claims, the undersigned finds that Plaintiff has not established likelihood of success on the merits underlying his request for injunctive relief.

### i. Claims for Injunctive Relief Unrelated to the Complaint

"[A] party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997). Plaintiff argues for the first time in his TRO Motion that he was denied access to religious services while on RHCP. (TRO Motion at 9-11.) However, no First Amendment claim was brought in the Complaint and Plaintiff does not include access to religious services among the forms of

9

injunctive relief he seeks. (*Compare* Compl. *with* TRO Motion.) Likewise, Plaintiff argues for the first time in his TRO Motion that he was denied access to (non-legal) library books. (TRO Motion at 11, *see also* Compl.)[8] Lastly, Plaintiff argues for the first time in his Reply that "staff destroyed or lost" the affidavit at issue in the MAR Order. (Docket Entry 40 at 2.) Because these claims are unrelated to the conduct asserted in the Complaint, Plaintiff is not entitled to injunctive relief relating to them, and they provide no support to the claims that are properly before the Court. *See Hicks v. Doyle*, No. 1:20CV552 (AJT/JFA), 2023 WL 2385613, at *6 (E.D. Va. Mar. 6, 2023) (unpublished) (impermissible for *pro se* prisoner to attempt to expand the scope of his claims via filings after the complaint; "Plaintiff may not raise new factual allegations in a supporting brief that were not included in the operative complaint.").

## ii. <u>Denial of Access to the Courts</u>

Because Plaintiff alleges that Defendants have limited his tablet access and interfered with his legal mail and that this has had a negative impact on his attempt to litigate state-court matters, the undersigned analyzes this aspect of Plaintiff's injunctive relief request under the constitutional right of access to the courts. *See Murray v. Giarratano*, 492 U.S. 1, 11 n.6 (1989) ("The prisoner's right of access [to the courts] has been described as a consequence of the right to due process of law and as an aspect of equal protection." (internal citations omitted)). Unlike in his previous motions for injunctive relief, here Plaintiff does point to an unfavorable decision in a prior state-court action that he claims resulted from Defendants' alleged conduct. (*See generally* MAR Order.) However, for the reasons stated below, Plaintiff's contention regarding

---

[8] "The Constitution contains no right of access to a general-literary library" for prisoners. *See Counts v. Newhart*, 951 F. Supp. 579, 587 (E.D. Va. 1996), *aff'd*, 116 F.3d 1473 (4th Cir. 1997).

said case fails to show actual injury and therefore cannot show likely success on a claim for denial of access to the courts. *See Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (denial of access to the courts requires prisoner to identify an actual injury resulting from official conduct).

In the MAR Order, the court determined that there was no basis for modifying the state court's finding that Plaintiff was guilty of one count of statutory rape of a child 15 years of age or younger and two counts of taking indecent liberties with a minor. (MAR Order at 1.) Although Plaintiff attempted to dispute some of the evidence involved in his conviction, the state court found said attempt meritless. (*See id.* at 2-4.) The court found that "[Plaintiff's] assertions that the victim has recanted her testimony are self-serving and conclusory." (*Id.* at 4.) The court made the following conclusions of law:

1. A [party] who seeks relief by motion for appropriate relief must show the existence of the asserted grounds for relief, with the moving party having the burden of proving by a preponderance of the evidence every fact essential to support the motion. The same is true for the ancillary motions filed. [Plaintiff] has failed to meet his burden.
2. [Plaintiff] fails to make, allege[,] or otherwise present any legal argument or colorable claim, which might afford him relief.
3. An evidentiary hearing is not required because [Plaintiff]'s Motion raises no question of fact requiring resolution.
4. [Plaintiff]'s Motion is without merit.

(*Id.* at 4-5.) Here, Plaintiff conclusorily alludes to having lost "his state motion for appropriate relief and [state] petition for writ of certiorari[,]" which he claims he "could have better litigated" if he had the level of access to a tablet he desired. (TRO Motion at 19, 23-24.) But The MAR Order shows that Plaintiff had the capacity to present and litigate several legal claims therein, undermining his contention that the alleged interference with his mail meaningfully inhibited his access to the courts.

11

Therefore, Plaintiff's argument in the instant action regarding tablet access and mail interference fails; the Constitution's guarantee of access to courts does not include a guarantee that the claims a prisoner seeks to litigate will succeed. *See, e.g., James v. Cooper*, No. 5:19-CT-3029-BO, 2020 WL 4917642, at *5 (E.D.N.C. Aug. 7, 2020) (unpublished) ("plaintiff's conclusory assertions that he was not able to effectively litigate his actions because he did not have access to a law library are insufficient to state an access to courts claim"), *aff'd*, 860 F. App'x 40 (4th Cir. 2021); *Mendez v. Cook*, No. CV 6:19-539-DCN-KFM, 2019 WL 5073723, at *2 (D.S.C. Sept. 9, 2019) (unpublished), *report and recommendation adopted*, No. 6:19-CV-00539-DCC, 2019 WL 5063433 (D.S.C. Oct. 8, 2019) (*pro se* prisoner plaintiff who "has filed numerous motions, replies, and objections since the filing of this case" unlikely to succeed on the merits of his claim of denial of access to the court); *Roberts v. Hooks*, No. 1:21-CV-00058-MR, 2021 WL 4314589, at *3 (W.D.N.C. Sept. 22, 2021) (unpublished) (*pro se* prisoner—whose state-court Motion for Appropriate Relief and attempt to seek certiorari review were dismissed—failed to show actual injury and was not entitled to injunctive relief regarding his denial of access to courts claim), *aff'd in part, dismissed in part*, No. 21-7416, 2022 WL 604061 (4th Cir. Mar. 1, 2022).[9]

Furthermore, Plaintiff acknowledges that he has access to North Carolina Prisoner Legal Services [("NCPLS")], who, "on several occasions … informed [him] that it felt that he would be unsuccessful in challenging his criminal case." (TRO Motion at 8.) The undersigned notes that under *Bounds v. Smith*, 430 U.S. 817, 821-28, (1977), *overruled on other grounds by Lewis v. Casey*, 518

---

[9] *See also Marshall v. Knight*, 445 F.3d 965, 967-68 (7th Cir. 2006) (state actors must assure that prisoners have access to courts to present claims concerning the legality or conditions of their confinement, but "state actors have no duty to assure that prisoners can litigate those claims effectively once they have been raised in court. The right to access[ ] goes no further than access.") (citation omitted).

U.S. 343, 354, (1996), "the State has an obligation to provide *either* prison law libraries *or* assistance from persons trained in the law." *Chapman v. Herron*, No. 1:11CV194, 2013 WL 2436439, at *4 (M.D.N.C. June 5, 2013) (unpublished) (emphasis in original), *report and recommendation adopted*, No. 1:11CV194, 2013 WL 4811762 (M.D.N.C. Sept. 9, 2013). Because inmates in this State have access to NCPLS, the State has no legal obligation to either appoint counsel or to provide law libraries for its inmates. *See Burgess v. Herron*, No. 1:11CV420, 2011 WL 5289769, at *2 (M.D.N.C. Nov.2, 2011) (unpublished). Plaintiff's conclusory remark that "[NCPLS] are an ineffective entity [sic]" in his Reply (Docket Entry 40 at 3) has no effect on this determination.

Ultimately, Plaintiff has not shown preliminary injunctive relief is warranted here. *See Carter v. Tapp*, No. 1:19-CV-111-FDW, 2019 WL 6044888, at *2 (W.D.N.C. Nov. 14, 2019) (unpublished) (*pro se* incarcerated plaintiff failed to establish likelihood of success on the merits or that he was likely to suffer irreparable harm in the absence of preliminary relief where conditions complained of included intentionally harmful interference with mail); *Tolentino v. Weigle*, No. 3:20-CV-219, 2021 WL 11702482, at *3 (W.D. Pa. Sept. 30, 2021) (unpublished) (same). This is especially so considering that courts should only grant such relief "involving the management of correctional facilities only under exceptional and compelling circumstances," *McGurgan*, 2021 WL 772728 at *2, and that "sweeping intervention in the management of state prisons is rarely appropriate when exercising the equitable powers of the federal courts," *Taylor v. Freeman*, 34 F.3d 266, 269 (4th Cir. 1994).

### iii. **Conditions of Confinement**

As to Plaintiff's remaining concerns regarding prison conditions in which he seeks injunctive relief, he again fails to demonstrate that he is likely to succeed on the merits of a

Case 1:23-cv-00282-TDS-JLW    Document 55    Filed 03/10/25    Page 13 of 22

conditions of confinement claim. "The Eighth Amendment, which prohibits infliction of 'cruel and unusual punishments,' applies to claims by prisoners against corrections officials challenging conditions of confinement." *Porter v. Clarke*, 923 F.3d 348, 355 (2019) (citations omitted). This "imposes a duty on prison officials to provide humane conditions of confinement … [and] ensure that inmates receive adequate food, clothing, shelter, and medical care." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (internal quotations and citation omitted). However, "the Constitution does not mandate comfortable prisons," and as often may be the case, some conditions that are "restrictive and even harsh … are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Thus, "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (internal quotations and citation omitted).

Eighth Amendment condition of confinement claims are evaluated by a two-part test that has both an objective and subjective component. *Porter*, 923 F.3d at 355. "First, the deprivation alleged must be, objectively, sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (cleaned up). To be "sufficiently serious," "a prison official's act or omission must result in the denial of 'the minimal civilized measures of life's necessities.' " *Id.* (quoting *Rhodes*, 452 U.S. at 347). Second, "a prison official must have a sufficiently culpable state of mind." *Id.* (internal quotation marks omitted) (quoting *Wilson*, 501 U.S. at 297). "That state of mind is one of 'deliberate indifference' to inmate health or safety." *Id.* (quoting *Wilson*, 501 U.S. at 302-303). "A claim of deliberate indifference … implies at a minimum that defendants were plainly placed on notice of a danger and chose to ignore the danger notwithstanding the notice." *White ex rel. White v. Chambliss*, 112 F.3d 731, 737 (4th Cir. 1997).

14

Here, Plaintiff has not made a clear showing that any of the confinement conditions he complains of rise to the level of "sufficiently serious" required by the above test. Therefore, he is unlikely to succeed on the merits of his claim challenging said conditions. At best, Plaintiff has reasserted the allegations in his Complaint, providing a little more detail into the conditions of his confinement and his resulting injuries. (*See generally* TRO Motion.) However, for the reasons that follow, this strategy is unavailing.

As a threshold matter, "the burden placed upon Plaintiff[ ] to show that each requirement of a preliminary injunction is met is high. Consequently, merely 'providing sufficient factual allegations to meet the [Fed. R. Civ. P.] 12(b)(6) standard of *Twombly* and *Iqbal*' does not show a likelihood of success on the merits." *J.O.P. v. U.S. Dep't of Homeland Sec.*, 338 F.R.D. 33, 60 (D. Md. 2020) (quoting *Allstate Ins. Co. v. Warns*, Civil No. CCB-11-1846, 2012 WL 681792, at *14 (D. Md. Feb. 29, 2012) (unpublished)). Ultimately, Plaintiff has not met his burden here.

First, Plaintiff has not alleged any specific harm that resulted from being deprived of recreation time, and thus the alleged conduct by Defendants could not rise to the level of a constitutional violation. *See Barnes v. Foster*, No. 5:20-CT-3218-M, 2023 WL 2731028, at *4 (E.D.N.C. Mar. 30, 2023) (citing *Brown v. Lamanna*, 304 F. App'x 207, 207 (4th Cir. 2008)); *see also Rice v. Rogers*, No. 1:22CV122, 2024 WL 3278527, at *8 (M.D.N.C. Jan. 29, 2024), *report and recommendation adopted as modified*, No. 1:22-CV-122, 2024 WL 3278539 (M.D.N.C. Mar. 18, 2024) (plaintiff's cursory allegations of abridged recreation time insufficient to state a claim for a violation of his constitutional rights).

The remainder of Plaintiff's conditions-of-confinement claim against Defendants—for improperly managing his control and/or housing status, ignoring his complaints regarding the

cleanliness of his cell, charging him money to access medical care, and improperly restricting his access to clean clothing, clean linen, personal hygiene items, shaves, haircuts, and to canteen, phone, and visitation privileges—also provide no basis for injunctive relief because, again, Plaintiff has failed to make a clear showing that he is likely to succeed on the merits.

None of the complained-of conditions rise to the level of constitutional violations. *See, e.g.*, *Richey v. McBride*, No. 6:24-CV-00176-JDA-KFM, 2024 WL 2263083, at *4 (D.S.C. Apr. 15, 2024), *report and recommendation adopted*, No. 6:24-CV-00176-JDA, 2024 WL 2258385 (D.S.C. May 16, 2024) (detainee plaintiff's conditions-of-confinement claims complaining of black mold and unclean linens subject to summary dismissal); *Sykes*, 2006 WL 2827709, at *5, *8 (no evidence that a constitutional injury occurred where Plaintiff alleged, in pertinent part, "no clean clothes regularly every 10-14 days[,] often no showers[,] no hair cut over [seven-]month period[,] not allowed to shave[,]"[10] and where other inmates complained of "sewage water[ ] flooding the cells, … no laundry service, no cleaning cells or cleaning materials, no haircuts, not allowed to shave … infested with insects, etc."); *Smyth v. Urch*, No. 0:13-CV-2691-RBH, 2014 WL 6646964, at *5 (D.S.C. Nov. 24, 2014) (unpublished) (defendant's motion for summary judgment granted against detainee plaintiff who complained he was denied canteen, phone, and television privileges due to his custody status); *McIlweine v. Harris*, No. CIVA 4:07-1117 CMCTE, 2008 WL 2909358, at *10 (D.S.C. July 22, 2008) (unpublished) ("Plaintiff's claim of a constitutional violation by defendants charging a $5.00 co-pay fails to set forth a constitutional claim.") (collecting cases); *Carter*, 2019 WL 6044888 at *2 (*pro se* incarcerated plaintiff failed to establish

---

[10] *See also, e.g.*, *Sears v. Washington*, 655 F. Supp. 3d 624, 627 (E.D. Mich. 2023) ("Denying a shave and a haircut also 'falls far short' of a constitutional violation.") (collecting cases).

likelihood of success on the merits or that he was likely to suffer irreparable harm in the absence of preliminary relief where conditions complained of included being denied canteen, visitation, and communication, and having his grievances ignored).

Moreover, Plaintiff has failed to allege any serious or significant physical or emotional injury resulting from the challenged conditions. *See, e.g., Vaughn v. Cambria Cnty. Prison*, No. 3:16-CV-249-KAP, 2018 WL 10036121, at *8 (W.D. Pa. Jan. 31, 2018) (complaint dismissed; Plaintiff's allegations of chronic cough due to black mold in prison insufficient to exceed *de minimis* injury standard); *Weldon v. Ramstad-Hvass*, 512 F. App'x 783, 794 (10th Cir. 2013) (similar); *Gonzalez-Reyna v. Ellis*, No. 1:09cv522 (AJT/TCB) 2009 WL 2421482, at *3 (E.D. Va. July 27, 2009) ("[I]t is doubtful that a skin rash, even one which causes pain and itching, is a sufficiently serious medical need to support an Eighth Amendment violation.").

The above Eighth-Amendment analysis demonstrates that Plaintiff is unlikely to succeed on the merits. Although Plaintiff does mention "due process" in filings pertinent to the instant action (Compl. at 10, 15; TRO Motion at 18; Docket Entry 40 at 4), Plaintiff fares no better under a Fourteenth-Amendment analysis.

It is well established that prisoners have no inherent constitutional right to placement in any particular prison, to any security classification, or to any particular housing assignment. *See Olim v. Wakinekona*, 461 US. 238, 245 (1983); *Perry v. JPay, Inc.*, No. 7:16-CV-00362, 2019 WL 1394379, at *5 (W.D. Va. Mar. 27, 2019), *aff'd sub nom. Perry v. Booker*, 776 F. App'x 169 (4th Cir. 2019); *Smyth*, 2014 WL 6646964, at *6 (D.S.C. Nov. 24, 2014) (finding that a prisoner has no constitutional right to any particular custody or security classification, to be housed in a particular institution, at a particular custody level, or in a particular portion or unit of a correctional

institution) (collecting cases); *Hewitt v. Helms*, 459 U.S. 460, 467 (1983) (assignment to administrative segregation does not create an atypical and significant hardship); *Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991 (changes in a prisoner's location, "variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges … are necessarily functions of prison management that must be left to the broad discretion of prison administrators to enable them to manage the prisons safely and efficiently[;]" none of these affects a prisoner's protected Fourteenth Amendment liberty interests).

Relatedly, although Plaintiff complains about being punished while on RHCP, the substantive punishment claims have been addressed above, and his procedural claims are deficient. With regard to his disciplinary status and housing assignment that he claims are being used as punishment, Plaintiff never argues that he was deprived of notice of the charges against him, an opportunity to be heard, the opportunity to call witnesses or offer evidence, or written notice explaining the reasoning for the disciplinary decision to place him on RHCP. *See Lisenby v. Riley*, No. 5:15-CV-0162 DCN, 2015 WL 1346777, at *4 (D.S.C. Mar. 23, 2015) (extensively detailing prisoners' procedural-due-process rights and collecting cases).

Lastly, Plaintiff's argument that the totality of his confinement conditions "add up to create an overall [sic] effect that is unconstitutional" (TRO Motion at 25) is conclusory and meritless. The conditions alleged by Plaintiff during his time while incarcerated—whether considered individually or in their totality—do not rise to the level of a due process violation. *See, e.g. Allen v. Mitchell*, No. 5:16-CT-3113-FL, 2020 WL 1443456, at *6 (E.D.N.C. Mar. 19, 2020), *aff'd*, 841 F. App'x 605 (4th Cir. 2021) (loss of good time credit, security classification to segregated housing, loss of visitation and other privileges all insufficient to allege deprivation of life, liberty,

18

or property by governmental action); *Lisenby v. Riley*, No. 5:15-CV-0162 DCN, 2015 WL 1346777, at *3 (D.S.C. Mar. 23, 2015) (unpublished) (plaintiff's allegations of periods of disciplinary detention and loss of telephone, visitation, and canteen privileges did not support legal conclusion that plaintiff suffered "atypical hardships" and thus prisoner's due-process rights were not implicated) (collecting cases); *Rios v. Bennett*, No. 1:08CV94-1-MU, 2008 WL 2115163, at *1 (W.D.N.C. May 19, 2008) ("It is well-established that the segregation time, … extra-duty hours[,] and the loss of privileges do not implicate a liberty interest" and do not entitle inmates to due process protections."). Ultimately, therefore, Plaintiff has failed to show a likelihood of success on the merits under the Eighth or Fourteenth Amendment.

Moreover, Plaintiff has not shown irreparable harm.[11] "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22 (citing *Mazurek*, 520 U.S. at 972). Here, as with his previous motions seeking injunctive relief, Plaintiff has failed to show extraordinary circumstances warranting immediate interference in prison management

---

[11] Notably, Plaintiff acknowledges being given psychiatric care "to help maintain, control and deal with the conditions of confinement on RHCP." (TRO Motion at 10.) Furthermore, Plaintiff's prison medical records and sick call documentation show that Plaintiff's medical conditions were limited to apparently minor issues for which he consistently received medical treatment. (*See generally* Docket Entry 52.) These include dandruff, superficial scratches on his skin that were treated, toothaches, allergies (for which he was given Allegra) aches and pains (for which he was given ibuprofen), a minor finger injury that was treated, congestion and coughing (for which he was given Mucinex), skin irritation (for which he was given hydrocortisone cream), difficulty breathing due to asthma (for which he was given Albuterol), and mental health concerns (for which he was given a mental health packet and follow-up appointment for further assessment). (*Id.* at 15-62.) These records also show Plaintiff was given access to information about how to contact SCI's medical, dental, and mental health care providers as needed, and that he was advised to return to seek care if his symptoms didn't improve. (*See id.* at 15-22.) They also appear to show that Plaintiff denied having diabetes (*see id.* at 29) and that on one occasion he denied needing assistance regarding a cough and congestion he had complained about (*see id.* at 23).

prior to the resolution of this matter. *See Cox v. Anderson*, No. 4:21-CV-3797-MGL-TER, 2023 WL 1482693, at *4 (D.S.C. Jan. 9, 2023) (unpublished) ("Plaintiff has not shown the extraordinary circumstances necessary to warrant this court's interference in the management of [the state department of corrections] prior to a full adjudication on the merits."), *report and recommendation adopted*, No. CV 4:21-03797-MGL, 2023 WL 1481025 (D.S.C. Feb. 2, 2023).

Moreover, there is no balance of hardships that tips in Plaintiff's favor and there is no showing that an injunction is in the public interest.[12] Both the Supreme Court and the Fourth Circuit have recognized the need to defer to prison administrators in matters of prison management. *See Beard v. Banks*, 548 U.S. 521, 528 (2006); *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) ("We must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them."); *Taylor*, 34 F.3d at 268 ("[A]bsent the most extraordinary circumstances, federal courts are not to immerse themselves in the management of state prisons or substitute their judgment for that of the trained penological authorities charged with the administration of such facilities.").

---

[12] Defendants make the following argument in opposition to the TRO Motion:

> Plaintiff has incurred 19 disciplinary convictions within the past two years, including two convictions for assault with a weapon, two convictions for threatening staff, multiple convictions for disobey order [sic], and multiple convictions for profane language. … Those disciplinary convictions are the reason that Plaintiff remains in RHCP. If Plaintiff would behave, then he could improve his conditions of confinement. It would be against the public interest to force prison officials to change their policies and give Plaintiff special treatment, especially considering Plaintiff's continued misbehavior.

(Docket Entry 39 at 12 (citing Docket Entry 39-1).) Plaintiff argues that he "has not been convicted in prison for assault with a weapon. He has never had or used weapons while in prison." (Docket Entry 40 at 5.)

20

In sum, Plaintiff cannot establish the *Winter* factors as to his request for injunctive relief. *See Wilson*, 2014 WL 272238 at *8; *Winter*, 555 U.S. at 20; *see also Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir.1991) (noting that the plaintiff "bears the burden of establishing that each [*Winter* factor] supports granting the injunction" (citations omitted)). Accordingly, the undersigned recommends that Plaintiff's TRO Motion be denied.

### b. **Subpoena Motion**

Finally, in Plaintiff's Subpoena Motion, he seeks the issuance of a subpoena "for several witnesses who would testify at an evidentiary hearing in the event this court orders a hearing on [the TRO Motion]" who he argues will "assist Plaintiff in meeting the requirements of injunctive relief." (Subpoena Motion at 1-3, 6, 7.) Here, this Court does not order a hearing on the TRO Motion and has specifically recommended that Plaintiff's TRO Motion be denied because Plaintiff is not entitled to injunctive relief. "The Court finds that [an evidentiary] hearing would not clarify any factual issues[ ] or produce any new evidence that might assist it ruling on the other pending motions." *Blakely v. Byars*, No. 5:11-CV-00871-RMG, 2013 WL 212627, at *1 (D.S.C. Jan. 18, 2013) (unpublished). To the extent Plaintiff's TRO Motion requests an evidentiary hearing and requests that the Court arrange for Plaintiff to be transported to said hearing, the court denies said requests. Accordingly, there is no basis for the Court to grant Plaintiff's Subpoena Motion, and it is therefore moot.

Moreover, Plaintiff has stated that "he currently has no money, assets, and is otherwise in debt[.]" (*Id.* at 7.) Plaintiff's *in forma pauperis* status notwithstanding, he "has failed to show that he can pay the costs associated with serving the subpoenas or the costs of witness fees. There is no requirement under 28 U.S.C. § 1915 that the court pay costs incurred with regard to a

21

subpoena." *Ramu v. Johnson*, No. CV 1:21-197-BHH-SVH, 2021 WL 2949810, at *2 (D.S.C. July 14, 2021) (unpublished) (citing *Badman v. Stark*, 139 F.R.D. 601, 604 (M.D. Pa. 1991) (inmates proceeding under 28 U.S.C. § 1915 are not entitled to have their discovery costs underwritten or waived); *see also Nance v. King*, C/A No. 88-7286, 1989 WL 126533, at *1 (4th Cir. Oct. 18, 1989) (unpublished) ("A district court generally has no duty to subpoena witnesses for an indigent litigant who cannot pay the witness fees in civil, non-habeas cases.") (collecting cases); *Ronell v. Cabbagestock*, No. CV 0:20-871-DCN-PJG, 2020 WL 6802909, at *2 (D.S.C. Nov. 18, 2020) (unpublished) (same); *Hodge v. Prince*, 730 F. Supp. 747, 749 (N.D. Tex. 1990), *aff'd*, 923 F.2d 853 (5th Cir. 1991) (same). Accordingly, the undersigned orders that Plaintiff's Subpoena Motion is denied.

## III.    <u>CONCLUSION</u>

For the reasons stated above, **IT IS HEREBY RECOMMENDED** that Plaintiff's motion entitled "Motion for Temporary Restraining Order and a Preliminary Injunction Order" (Docket Entry 36) be **DENIED** as stated herein.

**IT IS HEREBY ORDERED** that Plaintiff's motion entitled "Motion for the Issuance of a Subpoena and to have a United States Marshal or a Person Specially Appointed by the Court to Serve the Subpoena, and for an Order to Transport" (Docket Entry 37) is **DENIED** as stated herein.

/s/   Joe L. Webster
_____
United States Magistrate Judge

March 10, 2025
Durham, North Carolina

Case 1:23-cv-00282-TDS-JLW    Document 55    Filed 03/10/25    Page 22 of 22